Fremont-Smith, J.
This is a product liability action brought by plaintiffs Ruben and Edith Hernandez, husband and wife, arising out of a workplace accident involving plaintiffs operation of a hydraulic trim press in 1990. In addition to the moving party, the defendants are Schuler Incorporated (hereinafter “Schuler”), Hannifin Press Company, a division of defendant Parker-Hannifin Corporation, which manufactured the press (hereinafter “Parker”), Magnesium Castings Company, which was the original purchaser of the press, and PH Hydraulics and Automation (whose relationship to the accident is unclear from the pleadings). Schuler has moved for summary judgment on the ground that, as it was neither the manufacturer nor the seller of the product, it had no legal duty to the plaintiff.
UNDISPUTED FACTS
Based upon the pleadings, depositions and affidavits, the following material facts are undisputed.
The press was manufactured by Parker in 1969 and sold by it to Magnesium Castings Company in 1970. No component of it was ever manufactured, owned or sold by Schuler.
In 1974, Parker sold all of its drawings, tracings, computer programs and cassette tapes which related to hydraulic and air presses (together with all sales literature relating to hydraulic and air presses and parts therefore, and other related documentation) to Dyna-Quip Incorporated, whose name was changed in 1978 to Schuler.
Paragraph 6 of the 1974 asset purchase agreement between Parker and Dyna-Quip (now Schuler) provided as follows:
Dyna-Quip's Performance of Warranty Obligations of Press. Sixty days after sale and delivery of any hydraulic or air press or parts therefor by Parker or after May 31, 1975, whichever is earlier, Dyna-Quip will assume Parker’s obligation to repair or replace any defective hydraulic or air press or parts therefor *84 within one year after date of sale and delivery under warranties made by Parker on any such sale. Dyna-Quip will perform such repair and replacement at its expense; provided, however, that Dyna-Quip’s obligation to make such repair or replacement shall be limited to expenses aggregating $5,000. Dyna-Quip will not undertake any repair or replacement after $5,000 has been reached without Parker’s prior approval (which shall not be unreasonably withheld), and in such event Dyna-Quip shall be reimbursed by Parker for costs incurred by Dyna-Quip with Parker’s approval. However, Dyna-Quip does not assume any liability of Parker for consequential damages to persons or properly by reason of any breach of any warranty, express or implied, made by Parker in connection with a sale of hydraulic or air presses or parts therefor.
Schuler contends that, on the above undisputed facts, it is entitled to judgment as a matter of law.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c).
On the undisputed facts here, Schuler is entitled to summary judgment. No express or implied warranties of Schuler are involved, since Schuler did not manufacture, sell, install or repair the machine. For the same reason, there is no possible way there could have been any negligence on tire part of Schuler relating to the machine in question or to the 1990 accident.
While the 1974 agreement specified that Ohio law would govern its interpretation, Massachusetts and Ohio law are in accord that a company which purchases the assets of another does not thereby become liable for the debts or liabilities of the transferor company but shall only be liable for debts or liabilities of the transferor if the transferee has expressly or impliedly agreed to assume the transferor’s debts and obligations, or if the transaction is merely a consolidation or merger, the transaction is fraudulent in fact, or the transferee is merely a continuation of the trans-feror. 15 Fletcher, Encyclopedia of the Law of Private Corporations (rev. perm. ed. 1983) 188-89, §7122. See Cattron, Inc. v. Overhead Crane and Hoist, Inc., 32 Ohio App.3d 80, 513 N.E.2d 1390 (1987); Gusman v. MRM/Elgin, 409 Mass. 563 (1991) (a corporation which purchased stock and assets of another corporation for the purpose of carrying on the other corporation’s business is not liable for the other corporation’s debts and obligations).
Although plaintiff argues that Schuler’s predecessor, Dyna-Quip, by paragraph 6 of the 1974 agreement, agreed to assume Parker’s debts and obligations with respect to hydraulic presses, that agreement, to the contrary, expressly disavowed “any liability of Parker for consequential damages to persons or property by reason of any breach of any warranty, express or implied, made by Parker in connection with the sale of hydraulic or air presses or parts therefore.” And, while Dyna-Quip did undertake to assume Parker’s obligation to repair or replace any defective hydraulic or air press or part therefore, the obligation was expressly limited to repair or replacement of Parker’s said machines “within one year after date of sale and delivery under warranties made by Parker on any such sale." As the hydraulic press in question had been sold and delivered by Parker in 1970, Schuler’s duty to repair clearly did not cover the machine in question. Accordingly, it is clear that Schuler did not expressly or impliedly agree to assume Parker’s debts and obligations with respect to the hydraulic press in question. None of the other exceptions to the legal rule (that a transferee of assets is not thereby obligated for the debts and liabilities of the transferor) is even argued to be applicable to this case.
The same considerations are dispositive of plaintiffs similar argument that, under Massachusetts law, one who undertakes to repair or rebuild a product, pursuant to an agreement with the manufacturer, may be liable for negligence to the same degree as the manufacturer. (See H.P. Hood and Sons v. Ford Motor Company, 370 Mass. 69, 75 (1976).) Here, however, Schuler’s predecessor Dyna-Quip clearly did not undertake to repair or rebuild hydraulic presses other than those requiring such repair within one year of Parker’s sale of the press. Thus, plaintiffs citation to cases and authorities relating to a manufacturer’s, a seller’s or a repairer’s liability for negligent repair or for failure to warn of a known danger, such as doCanto v. Ametek, Inc., 367 Mass. 776, 784-85 (1975), and Florentino v. A.E. Staley Mfg. Co., 11 Mass.App.Ct. 428, 433 (1981), are inapposite.
Plaintiffs additional argument with respect to G.L.c. 93A, that Schuler is liable for a violation thereof by reason of a breach of warranty, is incorrect for the same reasons. Schuler lacked any relationship to the plaintiff which might give rise to an implied warranty. Similarly, Schuler could not be guilty of a failure to warn about a defective or dangerous condition that could cause personal injury, such as to constitute an unfair trade practice under G.L.c. 93A by reason of being violative of the Federal Trade Commission interpretation of the Federal Trade Commission Act, 15 U.S.C. §45(a)(l), requiring such warnings (as was present in Maillet v. ATF Davidson Co., Inc., 407 Mass. 185, 192 (1990)), because the cited Federal Trade Commission interpretation creates such a duty to warn about such dangers, only upon a manufacturer of a dangerous product. Matter of International Harvester Co., 104 FTC 949 (1984).
ORDER
For all of the above reasons, it is hereby ORDERED that the defendant Schuler Incorporated’s motion for summary judgment is hereby ALLOWED.